# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| THOMAS APPLEYARD, | : | CIVIL ACTION NO. 3:CV-14-1429 |
|---|---|---|
| Petitioner | : | (Judge Nealon) |
| v. | : | |
| Kenneth Cameron, <u>et</u> <u>al</u>., | : | |
| Respondents | : | |

## **MEMORANDUM**

Petitioner, Thomas Appleyard, an inmate confined in the State Correctional Institution, Houtzdale, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. He attacks a conviction imposed by the Court of Common Pleas for County, Pennsylvania. (Doc. 1). Following careful consideration of the parties' submissions, and for the reasons discussed below, the Court will dismiss the petition as untimely. <u>See</u> 28 U.S.C. §2244(d).

**I.** **Background**

The victim in this case was born on February 18, 1974, in Mill Hall, Clinton County, Pennsylvania. (N.T. p. 15). In the Spring of 1985, Petitioner, Thomas Clair Appleyard married the victim's mother, Edna Lose. (N.T. p. 16). After the marriage, the victim lived together with her mother, the Petitioner, and her brother, in an apartment in Blanchard, Pennsylvania. (N.T. p. 16).

As a form of discipline, Petitioner would paddle the victim with a wooden paddle, containing holes, when she would not do her chores. (N. T. p. 16-17). The victim testified that the paddling hurt. (N.T. p. 17). On November 23, 1986, Petitioner called the victim, who was then twelve years old, into his room and told her to take of her clothes. (N.T. p. 18). The victim was scared and refused. Id. At some point, either Petitioner or the victim removed all of her clothes and while the victim was crying and saying "no," Petitioner began to touch her breast and vaginal areas. Id. Later that evening, the victim reported the incident to her mother. (N.T. p. 19). Additionally, the victim reported this incident to Children and Youth Services, as well as Trooper Sally Brown of the Pennsylvania State Police. (N.T. p. 19-20). Petitioner moved out of the home on the 23rd of November, the evening of the incident, only to move back to the residence sometime in 1987. Id.

Shortly after Petitioner was allowed to return to the residence, he began to have indecent contact with the victim again. (N.T. p. 21). He now would engage in sexual intercourse with her. Id. This behavior began in February 1988. Id. In addition to sexual intercourse, Petitioner began performing oral sex on the victim and forced her to perform oral sex on him. (N.T. p. 22). The victim was afraid to tell anyone about these incidents because Petitioner told her that if she did, she would be put in a home for girls. (N.T. p. 22).

Although the victim moved in with her grandfather in 1988 (N.T. p. 24), Petitioner made her maintain daily telephone contact with him. (N.T. p. 26). Additionally, Petitioner would make the victim come to his apartment on a weekly basis to engage in oral sex as well as sexual intercourse. (N. T. p. 32). In addition to fearing Petitioner's threats, Petitioner would also punish the victim by painfully inserting plastic "dildos' in her vaginal and rectal areas. This type of punishment would take place whenever the victim would not do her chores or be somewhere she wasn't supported to be. Similarly, if the victim would not go into his apartment or just generally disobey him, this would take place. (N.T. p. 29-30). Tracy was afraid of the "dildos" and when Appellant would use them on her, she would cry and tell him "no". (N.T. p. 29).

Finally, Petitioner took nude photographs of the victim posing with the sexual devices and threatened to spread the photos around and to take them to her school if she did not listen. (N.T. 31-32). These incidents took place at least once a week, of not more, from January 1988, through and until March 1991. (N.T. p. 51). The victim did not want any of these incidents to occur but felt that she had no choice. (N.T. p. 51).

Petitioner was charged with once count of statutory rape, thirty-nine counts of rape, sixty-five counts of involuntary deviate sexual intercourse, thirty-nine

counts of indecent assault and one count of corruption of minors. See Commonwealth of Pennsylvania v. Thomas C. Appleyard, CP-14-CR-0001601-1992 (Criminal Docket). On March 22, 1994, after a jury trial, Petitioner was found guilty of all 145 counts in which he had been charged. Id.

On April 4, 1994, Petitioner was sentenced to an aggregate sentence of thirty-one (31) to sixty-two (62) years imprisonment. Id.

On April 11, 1994, Petitioner filed a direct appeal to the Pennsylvania Superior Court. (Doc. 24-1 Notice of Appeal). He raised the following two issues for review:

> 1. Whether the trial court erred in denying Appellant's motion in limine and in permitting testimony to be introduced at trial concerning prior sexual misconduct between Appellant and the victim, and whether trial counsel was ineffective for failing to seek a cautionary instruction upon the admission of such evidence?
>
> 2. Whether separate sentences for thirty-nine counts of rape and sixty-five counts of involuntary deviate sexual intercourse constitute an illegal sentence, when the counts arose from the same criminal conduct?

(Doc. 24-1 at 33, Superior Court Memorandum Opinion).

By Memorandum Opinion filed August 29, 1995, a panel of the Pennsylvania Superior Court vacated Petitioner's sentence and remanded for re-sentencing. Id.

On September 27, 1995, Petitioner filed an allowance of appeal to the

Pennsylvania Supreme Court, which was denied on April 18, 1996. (Doc. 24-1 at 38-39, Order of Supreme Court).

On August 26, 1996, Petitioner was re-sentenced to an aggregate term of imprisonment of not less than twenty-seven (27) years, nor more than fifty-four (54) years. See Commonwealth of Pennsylvania v. Thomas C. Appleyard, CP-14-CR-0001601-1992 (Criminal Docket).

On September 5, 1996, Petitioner filed a motion to reconsider and modify the sentence imposed and to reduce the period of incarceration. (Doc. 24-1 at 82, Post-Sentence Motion).

By Opinion and Order dated October 31, 1996, Petitioner's post-sentence motion was denied. (Doc. 24-1 at 46, Order).

On November 17, 1996, Petitioner filed an appeal to the Pennsylvania Superior Court. (Doc. 24-1 at 47, Appeal).

By Order dated December 16, 1996, the Court of Common Pleas denied Petitioner's petition to proceed in forma pauperis on appeal, stating that the "petition is inappropriate at this time inasmuch as Thomas C. Appleyard did not timely appeal any orders of this Court." (Doc. 24-1 at 50, Order).

On January 30, 1997 Petitioner filed a petition under Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541, et seq. ("PCRA"). (Doc. 24-1 at 51,

PCRA petition).

By Order dated July 18, 1997, Petitioner was appointed counsel and granted leave to file an amended PCRA, if needed. (Doc. 24-1 at 61, Order).

On July 28, 1999, Petitioner filed a counseled Amended Motion for Post-Conviction Collateral Relief. (Doc. 24-1 at 62).

By Memorandum and Order dated August 8, 2000, Petitioner's PCRA petition was denied. (Doc. 24-2 at 4-5).

On September 21, 2000, Petitioner filed a Notice of Appeal to the Pennsylvania Superior Court, appealing the PCRA Court's August 8, 2000 Order denying the PCRA petition. (Doc. 24-2 at 29, Notice of Appeal).

On April 27, 2001, the Pennsylvania Superior Court affirmed the lower court's decision denying Petitioner's PCRA petition. (Doc. 24-2 at 38, Memorandum Opinion).

On May 25, 2001, Petitioner filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court, which was denied on February 1, 2002. (Doc. 24-2 at 44, Order).

On January 23, 2003, Petitioner filed a second PCRA petition. (Doc. 24-2 at 45).

On April 21, 2004, Petitioner filed a third PCRA petition. (Doc. 24-2 at 68).

By Order dated May 5, 2004, the PCRA court dismissed the PCRA petition "without consideration of its merits", stating that "Defendant has a motion for Post Conviction Collateral Relief, filed January 23, 2003, currently pending before this Court." (Doc. 24-2 at 57, Order).

On June 4, 2004, Petitioner filed a Notice of Appeal from the PCRA Court's Order. (Doc. 24-2 at 69). By Judgement Order dated August 8, 2005, the Pennsylvania Superior Court dismissed Petitioner's appeal, stating that they "are precluded from reaching the merits of Appleyard's appeal, as the law is clear that a serial or subsequent PCRA petition may not be entertained while a previous petition is still pending." (Doc. 24-2 at 73, Order).

On July 24, 2014, Appleyard filed the instant petition for writ of habeas corpus. (Doc. 1, petition). He once again challenges his 1994 conviction. Specifically, Appleyard raises the following four grounds for relief: (1) Inordinate delay; (2) Ineffective assistance of counsel; and (3) Sentence is cruel and unusual punishment. Id.

## II. Discussion

A state prisoner requesting habeas corpus relief pursuant to 28 U.S.C. § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (d)(1) A one-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of - (A) the date on which the judgment became final by the conclusion of direct review or the expiration for seeking such review . . .
>
> (d)(2) The time during which a properly filed application for State post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2)(emphasis added); see generally, Jones v. Morton, 195 F.3d. 153, 157 (3d Cir. 1999). Thus, under the plain terms of § 2244(d)(1)(A), the period of time for filing a habeas corpus petition begins to run when direct review processes are concluded. See Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000)("[T]he AEDPA provides that upon conclusion of direct review of a judgment of conviction, the one year period within which to file a federal habeas corpus petition commences, but the running of the period is suspended for the period when state post-conviction proceedings are pending in any state court.")(emphasis in original); Fields v. Johnson, 159 F.3d 914, 916 (5th Cir. 1998)(*per curiam*); Hoggro v. Boone, 150 F.3d 1223, 1226 (10th Cir. 1998). It is not the conclusion of state post-conviction collateral review processes that starts the running of the limitations period. See Bunnell v. Yukins, No. 00-CV-73313,

8

2001 WL 278259, *2 (E.D. Mich. Feb 14, 2001)("Contrary to Petitioner's assertion, the limitations period did not begin to run anew after the completion of his post-conviction proceedings.").

As indicated above, section 2244(d)(2) operates to exclude only the time within which a "properly filed application" for post conviction relief is pending in state court. Thus, when a petition or appeal has concluded and is no longer pending, the one (1) year statute of limitations starts to run and the time is counted. A "properly filed application" for post conviction relief under § 2244(d)(2) is one submitted according to the state's procedural requirements, such as rules governing time and place of filing. Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998). The Third Circuit Court of Appeals has defined "pending" as the time during which a petitioner may seek discretionary state court review, whether or not such review is sought. Swartz v. Meyers, 204 F.3d 417 (3d Cir. 2000). "Pending," however, does not include the period during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition. Stokes v. District Attorney of the County of Philadelphia, No. 99-1493, 2001 WL 387516, at *2 (3d Cir., April 17, 2001). Likewise, the statute of limitations is not tolled under § 2244(d)(2) for the time during which a habeas petition is pending in federal court. Jones, 195 F.3d at 158.

The AEDPA statute of limitations also may be subject to equitable tolling. The Third Circuit has held that the federal habeas statute of limitations is subject to equitable tolling only in extraordinary circumstances. See Merritt v. Blaine, 326 F.3d 157, 161 (3d Cir. 2003). In Merritt, the Court of Appeals set forth two general requirements for equitable tolling: "(1) that the petitioner has in some extraordinary way been prevented from asserting his or her rights; and (2) that the petitioner has shown that he or she exercised reasonable diligence in investigating and bringing the claim." Id. (internal citations and quotations omitted).

### A. Statutory Tolling

The Petitioner in the instant matter was resentenced on August 26, 1996. Because an appeal was never perfected in the Pennsylvania Superior Court, his judgment of sentence became final on September 25, 1996, at the expiration of the thirty-day period to file a direct appeal to the Pennsylvania Superior Court. See 42 Pa.C.S.A. § 9545(b)(3); Pa.R.App.P. 903; Pa.R.Crim.P. 720(a)(3). Thus, the clock for filing a § 2254 petition began on September 25, 1996 and Petitioner had until September 25, 1997, to file a timely PCRA petition, as well as a federal habeas corpus petition. Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).

Pursuant to 28 U.S.C. § 2244(d)(2), when Appleyard filed his timely PCRA petition on June 30, 1997, the AEDPA's filing period was statutorily tolled, with

approximately 87 days of the one (1) year filing period remaining. See Harris, 209 F.3d at 328. On February 1, 2002, the Pennsylvania Supreme Court denied allocatur on Appleyard's PCRA petition that was filed on June 30, 1997. The remaining 87 day statutory period started to run again on February 1, 2002. Consequently, Petitioner was required to file his habeas corpus petition approximately, on or before April 30, 2002. The instant petition was not filed until July 24, 2014, more than twelve years after the limitations period expired. Thus, the petition for habeas corpus relief is barred by the statute of limitations.

Petitioner's second PCRA petition, filed on January 23, 2003, was filed after the expiration of the AEDPA statute of limitations and, therefore, does not toll the statute of limitations. Consequently, the AEDPA statute of limitations is not subject to statutory tolling.

### B. Equitable Tolling

We must next examine whether the AEDPA statute of limitations should be equitably tolled to consider the petition timely filed. Robinson v. Johnson, 313 F.3d 128, 134 (3d Cir.2002), cert. denied, 540 U.S. 826 (2003)(citing Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 617–618 (3d Cir.1998)). The limitation period may be tolled when the principles of equity would make the rigid application of a limitation period unfair. Holland v. Florida, 560 U.S. 631, 130

S.Ct. 2549, 2560 (2010)("Now, like all 11 Courts of Appeals that have considered the question, we hold that § 2254(d) is subject to equitable tolling in appropriate cases."); Satterfield v. Johnson, 434 F.3d 185, 195 (3d Cir.2006); Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999).

To be entitled to equitable tolling, [Petitioner] must show " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 130 S.Ct. at 2562 (quoting Pace, 544 U.S. at 418); Lawrence v. Florida, 549 U.S. 327, (2007) (quoting id.). Courts must be sparing in their use of equitable tolling. Seitzinger v. Reading Hosp. & Med. Ctr., 165 F.3d 236, 239 (3d Cir.1999). In fact, the United States Court of Appeals for the Third Circuit has held that equitable tolling is proper "only in the rare situation where [it] is demanded by sound legal principles as well as the interests of justice." United States v. Midgley, 142 F.3d 174, 179 (3d Cir.1998).

In reviewing the record, including Petitioner's second PCRA petition, the Court finds that Petitioner has not identified any other possible basis for equitable tolling. None of the circumstances which warrant equitable tolling apply in this case to render the instant Petition timely because Petitioner did not act promptly to preserve his rights in this Court. Fahd, 240 F.3d at 244. Thus, he has failed to

allege that some extraordinary circumstance prevented him from asserting his rights in a timely habeas corpus petition and has failed to demonstrate that he exercised reasonable diligence in investigating and bringing his claims. Merritt, 326 F.3d at 168.

In determining whether extraordinary circumstances exist to warrant the application of equitable tolling, this Court must also examine Petitioner's due diligence in pursuing the matter under the specific circumstances he faced. Traub v. Folio, No. 04–386, 2004 WL 2252115, at *2 (E.D. Pa. Oct.5, 2004) (citing Schleuter v. Varner, 384 F.3d 69 (3d Cir.2004)) (affirming dismissal of habeas petition as time barred and not entitled to equitable tolling because lengthy periods of time had elapsed following his conviction before he sought relief). It is Petitioner's burden to show that he acted with reasonable diligence and that extraordinary circumstances caused his petition to be untimely. Id. Petitioner attempts to argue that this Court should find inordinate delay in the state court's review of Petitioner's second PCRA petition, filed well after the running of this Court's statute of limitations. However, Petitioner fails to allege any steps that he took to timely file the instant federal habeas petition and was somehow prevented from timely filing. As such, Petitioner did not act in a reasonably diligent fashion. Accordingly, equitable tolling is inapplicable in this matter. The petition will be

dismissed.

## III. Certificate of Appealability.

When a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue only if (1) the petition states a valid claim for the denial of a constitutional right, and (2) reasonable jurists would find it debatable whether the district court was correct in its procedural ruling. Slack v. McDaniel, 529 U.S. 473, 484 (2000). In this case, reasonable jurists could not disagree that the instant petition is time-barred. It is statutorily barred, and neither statutory nor equitable tolling apply to the petition.

## IV. Conclusion

In light of the foregoing, the petition for writ of habeas corpus will be denied, and the case will be closed. An appropriate order will follow.

Dated: September 29, 2017 /s/ William J. Nealon
**United States District Judge**

# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS APPLEYARD, | : | CIVIL ACTION NO. 3:CV-14-1429 |
| Petitioner | : | (Judge Nealon) |
| v. | : | |
| Kenneth Cameron, <u>et</u> <u>al</u>., | : | |
| Respondents | : | |

# **ORDER**

**AND NOW, THIS 19th DAY OF SEPTEMBER, 2017**, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The above captioned petition for writ of habeas corpus is **DISMISSED** as untimely under the statute of limitations. <u>See</u> 28 U.S.C. §2244(d).

2. The Clerk of Court is directed to **CLOSE** this case.

3. There is no basis for the issuance of a Certificate of Appealability. <u>See</u> 28 U.S.C. §2253(c).

4. Petitioner's motion for leave to file paperwork (Doc. 27) is **DENIED**.[1]

                                                                   /s/ William J. Nealon
                                                                **United States District Judge**

---

[1] Petitioner seeks to file paperwork concerning the merits of his underlying claims. However, such paperwork would have no bearing on the Court's ruling herein.